[No. E031148. Fourth Dist., Div. Two. Oct. 16, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
LEGION INSURANCE COMPANY, Defendant and Appellant.

COUNSEL

Nunez & Bernstein and E. Alan Nunez for Defendant and Appellant.

Alan K. Marks, County Counsel, and Scott M. Runyan, Deputy County Counsel, for Plaintiff and Respondent.

OPINION

**RICHLI, J.**—This is an appeal by Legion Insurance Company (Legion) from the trial court's order denying its motion to set aside summary judgment on a bail bond and to exonerate the bond. Legion argues the trial court lost jurisdiction over the bail bond it issued for defendant Jose Ancelmo Miranda in the criminal matter of *People v. Miranda* (Super. Ct. San Bernardino County, No. FBA06105) when the trial court issued a notice of forfeiture that failed to recite the correct bail bond number. Because Legion was given notice of forfeiture in accordance with Penal Code section 1305, subdivision (b),[1] we reject its contention and affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2001, Legion posted a bail bond for the release of defendant Miranda from custody. The bond number displayed on the bond and the power of attorney attached to it was "*BD1 1171924*."

---

[1] All future statutory references are to the Penal Code unless otherwise specified.

On February 6, 2001, defendant Miranda failed to appear in court, and the bail was declared forfeited. A notice of forfeiture was mailed on February 9, 2001, to Legion and the bail agent. Regarding the bond number, the notice specifically stated "*BD111171924.*" The notice also included defendant Miranda's full name, defendant Miranda's criminal case number, the date the bond was forfeited, and the bond amount.

The notice further stated, "Please take notice that the surety bond posted by you in behalf of the named defendant has been ordered forfeited by the court pursuant to Penal Code Section 1305. Your contractual obligation to pay this bond will become absolute on the 181st day following the date of mailing of this notice unless the court shall sooner order the forfeiture set aside and the bond reinstated. If payment is not received, summary judgment will be requested pursuant to Penal Code [section] 1306 upon the expiration of the time allowed by law. [¶] The 180th day is: 08/10/01[.]"

On February 23, 2001, bail agent James Altman, who is employed by Zzoom Bail Bonds, discovered that the notice of forfeiture contained an incorrect bond number. On that same day, Altman faxed a copy of the forfeiture notice and the power of attorney to his company's investigative unit.

On October 11, 2001, an ex parte summary judgment order was entered on the forfeiture against Legion and in favor of the County of San Bernardino. A notice of entry of judgment was mailed to the parties on October 15, 2001.

On November 6, 2001, Legion filed a motion to discharge or set aside the forfeiture and exonerate the bail bond on grounds of defective notice. On November 16, 2001, the San Bernardino County counsel filed a nonopposition to the motion to set aside the forfeiture, indicating that "respondent does not oppose the motion" and that "the motion may be granted pursuant to Penal Code section 1305[, subdivision] (b)."

On January 30, 2002, the trial court denied Legion's motion.[2] This appeal followed.

II

DISCUSSION

 Legion contends the misidentification of the bond number on the notice "resulted in a defective notice that was ineffectual for all purposes under the law." We disagree.

---

[2]Although a hearing was held, the reporter's transcript is not included in the record on appeal.

■ "An order denying a motion to set aside a forfeiture is appealable." (*People v. Ranger Ins. Co.* (1996) 51 Cal.App.4th 1379, 1382 [59 Cal.Rptr.2d 777] (*Ranger*), citing § 1308, *People v. Rolley* (1963) 223 Cal.App.2d 639 [35 Cal.Rptr. 803], and *County of Los Angeles v. Resolute Ins. Co.* (1972) 22 Cal.App.3d 961 [99 Cal.Rptr. 743].) The resolution of a motion to set aside a bail forfeiture is within the trial court's discretion and should not be disturbed on appeal unless an abuse of discretion appears in the record. (*People v. United Bonding Ins. Co.* (1970) 12 Cal.App.3d 349, 353 [90 Cal.Rptr. 714].)

Bail forfeiture proceedings are governed by statutes. (*People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302, 1305 [12 Cal.Rptr.2d 343].) Sections 1305 and 1306 are applicable to this case. Section 1305, subdivision (a) provides in pertinent part: "A court shall . . . declare forfeited the undertaking of bail . . . if, without sufficient excuse, a defendant fails to appear for any of the following: [¶] [list of hearings]." Section 1305, subdivision (b) states in relevant part: "If the amount of the bond . . . exceeds four hundred dollars ($400), the clerk of the court shall, within 30 days of the forfeiture, mail notice of the forfeiture to the surety . . . ." Where the surety is an authorized corporate surety, "and if the bond plainly displays the mailing address of the corporate surety and the bail agent, then notice of the forfeiture shall be mailed to the surety at that address and to the bail agent, and mailing alone to the surety or the bail agent shall not constitute compliance with this section." (§ 1305, subd. (b).) The statute further provides that "[t]he surety . . . shall be released of all obligations under the bond if any of the following conditions apply: [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (§ 1305, subd. (b).) Section 1306 generally provides that when a bond is forfeited and 180 days have elapsed, the trial court may enter a summary judgment against the bondsman for the amount of the bond.

■ "The following general rule must be applied whenever courts are called upon to construe the laws governing bail bonds: ' "The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citations.] Thus, Penal Code sections 1305 and 1306 dealing with forfeiture of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." [¶] The standard of review, therefore, compels us to protect the surety, and more importantly the individual citizens who pledge to the surety their property on behalf of persons seeking release from custody, in order to obtain the corporate bond.' " (*People v. American*

*Contractors Indemnity Co.* (2001) 91 Cal.App.4th 799, 805 [110 Cal.Rptr.2d 799], quoting *County of Los Angeles v. Surety Ins. Co.* (1984) 162 Cal.App.3d 58, 62 [208 Cal.Rptr. 263].) Sections 1305 and 1306 have been held to be "jurisdictional prescriptions." (*County of Los Angeles v. Ranger Ins. Co.* (1999) 70 Cal.App.4th 10, 16 [82 Cal.Rptr.2d 214].) "Failure to follow the jurisdictional prescriptions in sections 1305 and 1306 renders a summary judgment on the bail bond void. [Citation.]" (*Id.* at p. 16; see also *County of Los Angeles v. Surety Ins. Co., supra,* at p. 62 ["[i]t is well established in the case law that Penal Code sections 1305 and 1306 are subject to precise and strict construction"].)

While no cases are directly on point, our opinion in *People v. American Bankers Ins. Co.* (1991) 227 Cal.App.3d 1289 [278 Cal.Rptr. 314] (*American Bankers*), overruled on another ground in *People v. National Automobile & Casualty Ins. Co.* (2000) 82 Cal.App.4th 120 [97 Cal.Rptr.2d 858], is instructive. In *American Bankers,* the court clerk mistakenly inserted the bail agent's notice into an envelope addressed to a different bail agent for the same surety. When the second bail agent received the envelope, it forwarded the notice to the intended bail agent, who received the notice seven days after it was mailed by the clerk. (*American Bankers, supra,* at p. 1292.) Thus, the bail agent received actual notice of forfeiture, albeit not directly from the clerk but from another bail agent. The surety moved to set aside forfeiture and obtain exoneration due to the clerk's failure to strictly comply with section 1305. Noting that "the goal of effective notice was achieved [because] both the Surety and Lawton, its bail agent, received actual notice of the forfeiture in a timely fashion," this court concluded that the strict interpretation urged by the surety was "literal but absurd . . . ." (*American Bankers, supra,* at pp. 1295, 1296.) The court explained: "There is no reason why the Surety should be released from its liability under the bond merely because the return address on the envelope in which [the intended bail agent] received his copy of the notice of forfeiture was that of [the second bail agent] instead of the court clerk. There are times when there are good reasons for form to triumph over substance, but this is not one of them." (*Id.* at p. 1296.)

This court in *American Bankers,* applying the rules of statutory interpretation, reasoned that the purpose of section 1305 was to ensure that notices of forfeiture be mailed and that actual notice of the forfeiture go to both the surety and the bail agent within 30 days of the forfeiture. (*American Bankers, supra,* 227 Cal.App.3d at p. 1295.) The statute places the burden of mailing such notices on the only neutral party involved, the court itself. (*Ibid.*) "Thus, the statute has two related objects: to employ a reasonably effective means of notice, and to create a reasonably reliable record of that notice." (*Ibid.*)

The holding in *American Bankers* was followed in *Ranger, supra,* 51 Cal.App.4th 1379, where the court clerk sent a notice of forfeiture to the surety in accordance with the address on the bail bond, which was the address of a local agent who had been terminated. The surety had given the trial court notice of a change of address. The notice of forfeiture was received by the former agent, who forwarded it to the surety. (*Id.* at p. 1381.) That forfeiture was set aside due to the defendant's reappearance. The defendant failed to appear a second time, and a second forfeiture was declared. Again, the clerk sent the notice of forfeiture to the former agent who had been terminated, not the address given by the surety. The surety did not receive the second notice. (*Id.* at p. 1382.)

The appellate court agreed with our court's opinion in *American Bankers* that the first notice was effective and explained that, "[b]ecause actual notice was received, although it was forwarded by [the former agent] to the surety, the statute's goal of effective notice was achieved in this instance. [Citation.]" (*Ranger, supra,* 51 Cal.App.4th at p. 1385.) Insofar as the second notice was concerned, however, the court concluded it was "an empty act, meaningless under the statute." (*Id.* at p. 1386.) "When the clerk of the court does not send the notice both to the surety and to the bail bondsman as required by the statute, the surety is exonerated from its obligations under the bond. Here the trial court had in its hands the actual information it needed in order to effectuate the purpose of the statute—to give actual notice to the surety of the forfeiture. It chose to ignore this information in favor of the address imprinted on the bond which belonged to the general agent, with whom the surety was no longer associated." (*Ibid.*)

In the present matter, we believe "the statute's goal of effective notice was achieved . . . ." (*Ranger, supra,* 51 Cal.App.4th at p. 1385; see also *American Bankers, supra,* 227 Cal.App.3d at p. 1295.) The clerk here mailed the notice of forfeiture to both Legion and the bail agent within 30 days of the forfeiture as required by section 1305. Legion does not argue otherwise.

Rather, Legion argues the notice was defective because the clerk incorrectly recited the bail bond number on the notice. However, as the People point out, the statute does not specifically require the court clerks to recite the bail bond number in the notice, nor does this provision state that the surety shall be released of all obligations under the bond if the bail bond number recited in the notice is inaccurate. Instead, the statute provides that "[t]he surety . . . shall be released of all obligations under the bond if . . . [¶] (1) The clerk fails to mail the notice of forfeiture in accordance with this section within 30 days after the entry of the forfeiture. [¶] (2) The clerk fails

to mail the notice of forfeiture to the surety at the address printed on the bond. [¶] (3) The clerk fails to mail a copy of the notice of forfeiture to the bail agent at the address shown on the bond." (§ 1305, subd. (b).) Legion does not assert, and the record does not show, that the notice was defective based on the above grounds.

The record demonstrates Legion received actual notice of the notice of forfeiture. The notice was mailed on February 9, 2001, to Legion and the bail agent. The notice included defendant Miranda's full name, the criminal case number, the date the bond was forfeited, and the bond amount. The notice also informed Legion of the 180th day. On February 23, 2001, the bail agent discovered that the notice of forfeiture contained an incorrect bond number, and on that same day the bail agent faxed a copy of the forfeiture notice and the power of attorney to his company's investigative unit. Legion neither contends that it did not receive this notice nor claims that it was unable to identify the person to whom the notice applied.

The cases relied upon by Legion to support its position that the bond had been exonerated by operation of law when the clerk erroneously recited the bail bond number on the notice are distinguishable from this case. In *People v. Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216 [119 Cal.Rptr. 917], for example, the defendant failed to appear for arraignment, and the court ordered forfeiture of the bond. The following day, the defendant appeared and satisfactorily explained his absence, resulting in the forfeiture being set aside and the bail reinstated. The surety was not given notice of this forfeiture and reinstatement. Subsequently, the defendant did not appear for trial, and bail was ordered forfeited for a second time. This time notice was properly given and summary judgment entered. The surety appealed on the ground that notice of forfeiture within 30 days was mandatory under the statutes, and that the failure to give the surety notice of the first forfeiture order following the defendant's nonappearance at the arraignment resulted in its release from liability on the bond. The appellate court agreed, stating: "[W]e perceive no escape from the conclusion that the failure to give the notice of the forfeiture invalidated the bond and rendered the judgment based thereon void." (*Id.* at p. 221.)

The court in *Wilshire Ins. Co.*, after noting section 1305 "explicitly requires the clerk to mail notice of any declared forfeiture to the principal office of the corporate surety and to the bail agent who posted the bond," held that the clerk's failure to mail the notice to both the surety and the bail agent invalidated the bond and rendered the judgment void. (*People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d at pp. 220-221.) Here, the clerk mailed the notice to both Legion (the surety company) and the bail agent.

In *People v. Earhart* (1972) 28 Cal.App.3d 840 [104 Cal.Rptr. 322], the required notice was mailed to the corporate surety but not to the bail agent. The court held that the failure to follow the precise terms of the statute was fatal to a forfeiture of the bond and released the surety of its duties under the bond. (*Id.* at p. 843; see also *People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d at p. 221.) Again, in the instant matter, the clerk mailed the notice to both Legion and the bail agent as required by section 1305. Legion has failed to cite to any language in section 1305 that the clerk failed to follow. As explained above, the statute does not require the clerk to recite the bail bond number on the notice.

Legion also relies on *People v. American Contractors Indemnity Co., supra,* 91 Cal.App.4th 799. That case, however, is also inapposite since the clerk in that case failed to mail a notice of forfeiture to the surety company for a forfeiture that occurred on a later date. (*Id.* at pp. 806-807.) The court explained: "It is hard to see how notice of the March 10 forfeiture could suffice for the purpose of giving notice of a forfeiture which occurred a month later since, as the court held in *People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d 216, the surety and bail agent are entitled to separate notice under the statute every time a forfeiture is declared. The March 17 notice acted as notice of the purported March 10 forfeiture; separate notice of the April 6 forfeiture should have been sent within 30 days." (*American Contractors Indemnity Co., supra,* at p. 808.) The court in *American Contractors,* noting that "the statutory deadlines in sections 1305 and 1306 are considered inviolable," rejected the county's contentions that the surety received actual notice primarily because the clerk of the court failed to comply with the 30-day deadline for mailing a notice of forfeiture as set forth in section 1305 and refused "to depart from this well-established pattern by creating an exception . . . ." (*American Contractors Indemnity Co., supra,* at p. 810.) Here, in contrast, the court clerk strictly complied with the statutory deadlines in sections 1305 and 1306.

Finally, Legion relies on *Ranger, supra,* 51 Cal.App.4th 1379, where the court stated, "[a]n order that the surety reassumes its obligations under the bond must name the right surety or it is ineffective . . ." to support its position. (*Id.* at p. 1385.) However, the clerk here properly named the surety company; there is no issue in this case concerning the name of the surety.

*American Bankers* is factually distinguishable from those cases in which the bond was deemed exonerated due to technical violations of the notice provisions. In *American Bankers,* the bail agent "admit[ted] to having received a copy of the notice well within the 30 days allowed by statute." (*American Bankers, supra,* 227 Cal.App.3d 1289, 1296, fn. omitted.) Likewise, the bail agent here admits to receiving the notice, discovering the

incorrect bail bond number on the notice, and notifying the investigative unit of the error. "In none of those cases [*People v. Wilshire Ins. Co., supra,* 46 Cal.App.3d 216; *People v. Earhart, supra,* 28 Cal.App.3d 840; *County of Los Angeles v. Resolute Ins. Co.* (1972) 22 Cal.App.3d 961 [99 Cal.Rptr. 743]; and *People v. Surety Ins. Co.* (1984) 158 Cal.App.3d Supp. 1 [204 Cal.Rptr. 893]] [relied upon by the surety] did the record indicate that, despite the defective mailing, both the surety and its agent received actual notice of the forfeiture." (*American Bankers, supra,* at p. 1296, fn. 3.)

Based on the foregoing, we reject Legion's contention that the bail bond had been exonerated by operation of law when the clerk of the court incorrectly recited the bail bond number on the notice of forfeiture, since it is undisputed that both Legion and the bail agent received actual notice of the forfeiture within the time limits of section 1305.[3] Thus, the trial court was not deprived of jurisdiction in the instant case.[4]

## III

## DISPOSITION

The judgment is affirmed.

McKinster, Acting P. J., and Ward, J., concurred.

---

[3]Although not briefed by either party, we question whether Legion's motion to set aside was made in a timely fashion. (See, i.e., *People v. Topa Ins. Co.* (1995) 32 Cal.App.4th 296, 300-304 [38 Cal.Rptr.2d 167].) Section 1305, subdivision (i) states in pertinent part: "A motion filed in a timely manner within the 180-day period may be heard within 30 days of the expiration of the 180-day period. The court may extend the 30-day period upon a showing of good cause. The motion may be made by the surety insurer, the bail agent, [or] the surety . . . ."

In this case, the 180-day period expired on August 10, 2001. The bail agent discovered the inaccurate bail number on the forfeiture notice on February 23, 2001. Legion did not bring its motion to set aside the forfeited bond until November 6, 2001, after the court entered summary judgment on the forfeiture. From February 23, 2001, to August 10, 2001, Legion had about six months to bring its motion prior to the entry of judgment.

[4]While section 1305 was amended after both *American Bankers, supra,* 227 Cal.App.3d 1289 and *Ranger, supra,* 51 Cal.App.4th 1379 were decided, the amendments do not compel a different result in this case.